IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Robert Bruce, Bryan Slaton, and Grayson County Conservatives PAC,<br><br>*Plaintiffs*,<br><br>v.<br><br>J.R. Johnson, in his official capacity as Executive Director of the Texas Ethics Commission; Mary K. Kennedy, Randall H. Erben, Chad M. Craycraft, Chris Flood, Patrick W. Mizell, Richard S. Schmidt, Joseph O. Slovacek, and Steven D. Wolens, in their official capacities as members of the Texas Ethics Commission,<br><br>*Defendants*. | **Oral Hearing Requested**<br><br>Civil Action No. 1:22-cv-1166-RP |

**Plaintiffs' Motion for Temporary Restraining Order
and Preliminary Injunction**

Plaintiffs, by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 65, respectfully move this Court for a temporary restraining order and preliminary injunction for the reasons set forth herein and further reasons as may appear at any hearing on this Motion.

### Introduction

Fourteen years ago, in *Free Mkt. Found. v. Reisman*, 573 F. Supp. 2d 952 (W.D. Tex. 2008), this Court declared unconstitutional TEX. GOV'T CODE Sections 302.017 and 302.019 of the Texas Gov't Code. This Court held the statutes "r[a]n afoul of well-established Supreme Court precedent." *Reisman*, 573 F. Supp. 2d at 956. While the Court issued declaratory relief, it declined to issue any injunctive relief, deeming it unnecessary. *Id.* at 957.

Sections 302.017 and 302.019 were subsequently repealed by the Texas Legislature. However, the legislature left in place TEX. GOV'T CODE 302.021(d), which substantively repeats the same prohibition that was previously found unconstitutional in Section 302.019.

Additionally, the Court in *Reisman* was never asked to address TEX. GOV'T CODE § 302.0191 or § 302.021(e-1), both of which prohibit speech regarding a Speaker's race using funds accepted as political contributions under Title 15 of the Texas Election Code.

As this Court held in *Reisman:* "[T]he Speaker of the Texas House of Representatives is one of the most powerful and influential political figures in the state, vested with the responsibility of overseeing the course of lawmaking in every possible area of interest to any Texan. The election of the Speaker is not, therefore, a matter of internal Housekeeping. It is an issue of great political importance and a legitimate subject of public debate." 573 F. Supp 2d at 955.

"Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam). Accordingly, the First Amendment affords "the *broadest* protection to such political expression," in order to facilitate the "unfettered interchange of ideas for the

bringing about of political and social changes desired by the people." *Id.* (emphasis added, quotation marks omitted).

Of course, the express guarantees of "freedom of speech" and the "right . . . to petition the Government" under the First Amendment would be meaningless without the tools necessary to practically engage in effective expression. Thus, as the U.S. Supreme Court has repeatedly recognized, the right to engage in political speech necessarily includes the right to expend money to speak; after all, "virtually every means of communicating ideas in today's mass society requires the expenditure of money." *Id.* at 19.

"Expenditure limits . . . necessarily reduce the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *McCutcheon v. FEC*, 572 U.S. 185, 197 (2014) (internal citations omitted). For that reason, the Supreme Court has subjected expenditure limits to "the exacting scrutiny applicable to limitations on core First Amendment rights of political expression," holding that "the Government may regulate protected speech only if such regulation promotes a compelling interest and is the least restrictive means to further the articulated interest." *Id.*

While Contribution limits have been subjected to a lower standard of scrutiny, this was because limits "permit the symbolic expression of support evidenced by a contribution" *Id.* Where, as here, Contributions are not just limited but are banned, the more exacting scrutiny applied to expenditure limits must apply.

Yet Texas law violates these principles by prohibiting participation in a Speaker's race by individuals, political committees, and candidates. It does this by continuing to prohibit individual expenditures and expenditures or contributions from funds accepted as political contributions

under Title 15 of the Texas Election Code, despite this Court's holding in *Reisman*, 573 F. Supp. 2d 952.

By interfering "in an area of the most fundamental First Amendment activities," *Buckley*, 424 U.S. at 14, the severe contribution and expenditure bans imposed by Texas law are facial violations of the First and Fourteenth Amendments. And these laws apply right now—in the days and weeks leading up to the election for Speaker.

Accordingly, Plaintiffs seek an immediate temporary restraining order and preliminary injunction to prevent enforcement of these laws and thereby protect the rights of ordinary citizens to engage in robust debate about the Speakership during the coming weeks.

**Factual Background**

*The Role of the Speaker*

As the presiding officer of the Texas House of Representatives, the Speaker is one of the most powerful and influential political figures in the state. The powers of the Speaker are rooted in the Texas Constitution as well as the Texas House Rules of Procedure. The Constitution authorizes the House of Representatives to determine its own procedural rules, Tex. Const. art. III,§ 11, and the Texas House Rules of Procedure confer great powers upon the Speaker. Under the House Rules, the Speaker maintains order during floor debates, including recognizing legislators who wish to speak and ruling on procedural questions. House Rule l, § 9, 87th Leg. (Tex. 2021); House Rule 5, § 24. These rules authorize the Speaker to choose to what committees to refer legislation. House Rule 1, § 4. They empower the Speaker to appoint members of all standing House committees, and to designate the chair and vice-chair of each committee. House Rule 1, § 15; House Rule 4, § 2. The Speaker also has the constitutional duty to sign all bills and joint

resolutions passed by the Legislature. Tex. Const. art. III, § 38. Finally, the Speaker serves as a member of several influential government boards and committees, including the Legislative Budget Board, which develops budget and policy recommendations for legislative appropriations for all state agencies and provides fiscal analyses for proposed legislation. TEX. GOV'T CODE § 322.001.

This Court summarized the importance of public comment on the race for Speaker in *Reisman*: "[T]the Speaker of the Texas House of Representatives is one of the most powerful and influential political figures in the state, vested with the responsibility of overseeing the course of lawmaking in every possible area of interest to any Texan. The election of the Speaker is not, therefore, a matter of internal Housekeeping. It is an issue of great political importance and a legitimate subject of public debate." 573 F. Supp 2d at 955.

*The Upcoming Speaker's Race: Phelan vs Tinderholt*

The Texas Constitution requires the House of Representatives to choose one of its own members to serve as Speaker every two years, when the new legislature convenes. Tex. Const. art. III § 9. The legislature will next convene on January 10th, 2023, at which time the House will decide who to elect as Speaker. At this time, two members of the House have declared their intent to run as candidates for Speaker. State Rep. Dade Phelan, a Republican from Beaumont, is the incumbent Speaker and is seeking reelection. State Rep. Tony Tinderholt, a Republican from Arlington, is challenging Phelan for the position.

*Plaintiff's Planned Activities to Support Tinderholt*

Plaintiffs desire to exercise their right to free speech as protected by the First and Fourteenth Amendments to the United States Constitution by speaking to their fellow Texans regarding the upcoming Speaker's race.

Plaintiffs Bruce and Slaton desire to make expenditures from their personal funds on correspondence and other communications to support Tony Tinderholt for Speaker. *See* Declarations of Robert Bruce and Bryan Slaton.

Plaintiffs Slaton and Grayson County Conservatives PAC desire to make a contribution to Tinderholt's Speaker campaign from funds Slaton and GCC PAC have accepted as political contributions under Title 15 of the Texas Election Code. *See* Declaration of Bryan Slaton at ¶4; Declaration of Sandra Lawson at ¶4. As a candidate for public office, Slaton has a campaign account composed of funds accepted as political contributions. Declaration of Bryan Slaton at ¶ 3. GCC PAC, as a political committee, maintains a PAC account composed exclusively of funds accepted as political contributions. Declaration of Sandra Lawson at ¶3.

Likewise, Slaton and GCC PAC desire to make independent expenditures from their campaign and PAC accounts to support Tinderholt for Speaker. Declaration of Bryan Slaton at ¶4; Declaration of Sandra Lawson at ¶4. Slaton desires to use his campaign account to pay for communications that express his support for Tinderholt and the reasons he believes Tinderholt is better qualified to serve as Speaker. Declaration of Bryan Slaton at ¶4. Slaton believes these communications will not only aid Tinderholt in his campaign for Speaker but will also aid his own reelection in demonstrating to the public that he supports Tinderholt for Speaker. Declaration of Bryan Slaton at ¶4. GCC PAC desires to use funds from its PAC account to host an event to

support Tinderholt for Speaker and to invite Tinderholt to attend the event to meet its members, supporters, and others from the community. Declaration of Sandra Lawson at ¶4.

*Texas Gov't Code Chapter 302 Criminalizes the Planned Activities*

However, T<small>EX</small>. G<small>OV'T</small> C<small>ODE</small> § 302.0191, § 302.021(d), and § 302.021(e-1) make it a serious crime for Plaintiffs to take these basic actions in support of Tinderholt's campaign for Speaker.

T<small>EX</small>. G<small>OV'T</small> C<small>ODE</small> § 302.0191 prohibits both contributions and expenditures from funds accepted as political contributions under Title 15 of the Texas Election Code. The section states:

> Sec. 302.0191.  CONTRIBUTIONS AND EXPENDITURES FROM POLITICAL CONTRIBUTIONS.  A person, including a speaker candidate, may not make a contribution to a speaker candidate's campaign or an expenditure to aid or defeat a speaker candidate from:
> (1) political contributions accepted under Title 15, Election Code;
> (2) interest earned on political contributions accepted under Title 15, Election Code;  or
> (3) an asset purchased with political contributions accepted under Title 15, Election Code.

This section is bolstered by T<small>EX</small>. G<small>OV'T</small> C<small>ODE</small> 302.021(e-1), which repeats the prohibition in § 302.0191, stating:

> "A person commits an offense if the person knowingly makes a contribution to a speaker candidate's campaign or an expenditure to aid or defeat a speaker candidate from political contributions, interest earned on political contributions, or an asset purchased with political contributions in violation of Section 302.0191."

Per Section 302.021(f), this offense is defined as a Class A misdemeanor, punishable both civilly and criminally by up to one year in jail and a $4,000 fine. T<small>EX</small>. P<small>ENAL</small> C<small>ODE</small> § 12.21.

This prohibition means that Plaintiff Grayson County Conservatives PAC is prohibited from using any of its PAC funds to make a contribution to the Tinderholt for Speaker campaign or

– 7 –

from making an expenditure to aid Tinderholt for Speaker, such as hosting a community event to promote his candidacy. As a Texas general purpose political committee, all funds accepted by Grayson County Conservatives PAC are accepted as political contributions under Title 15 of the Election Code, and are reported to the Texas Ethics Commission as such.

This prohibition also means that Plaintiff Bryan Slaton is prohibited from making a contribution to the Tinderholt for Speaker campaign from his campaign account or from using his campaign funds to pay for communications in which he independently expresses his support for Tinderholt for Speaker and the reasons for that support.

Additionally, TEX. GOV'T CODE § 302.021(d) prohibits individuals from making expenditures of more than $100 to aid or defeat a Speaker candidate. The section states:

> "An individual other than the speaker candidate commits an offense if the individual, either acting alone or with another individual, expends or authorizes the expenditure of more than $100 for correspondence to aid or defeat the election of a speaker candidate or expends funds for any purpose other than for personal services and traveling expenses to aid or defeat the election of a speaker candidate."

Per Section 302.021(f), this offense is defined as a Class A misdemeanor, punishable both civilly and criminally by up to one year in jail and a $4,000 fine. TEX. PENAL CODE § 12.21.

This prohibition, which appears to be an analogue of former Section 302.019, which was declared unconstitutional in 2008, means that Plaintiffs Bruce and Slaton are prohibited from spending more than $100 of their personal funds to support correspondence or other communications to support Tinderholt for Speaker.

*The Texas Ethics Commission Enforces Chapter 302*

Under TEX. GOV'T CODE § 571.061, the Texas Ethics Commission "shall administer and enforce" Government Code Chapter 302. The Commission may pursue enforcement through its

– 8 –

executive director accepting jurisdiction over a sworn complaint filed with the Commission. TEX. GOV'T CODE § 571.124(c). Or it may do so by initiating a preliminary review without a sworn complaint by an affirmative vote of at least six Commission members. TEX. GOV'T CODE § 571.124(b). The Commission may also initiate civil enforcement actions or refer matters to a criminal prosecuting attorney on a motion adopted by at least six Commission members. TEX. GOV'T CODE § 571.171(a). The Commission may also issue an order requiring compliance with laws administered and enforced by the Commission. TEX. GOV'T CODE § 571.172. The Commission may impose a civil penalty of $5,000 or triple the amount at issue, whichever is more, for a violation of a law or even for a delay in complying with a Commission order. TEX. GOV'T CODE § 571.173.

## Argument

Every Texan has a constitutional right to speak publicly about who should be the next Speaker of the Texas House of Representatives. By forbidding individuals, political committees, and candidates from engaging in such speech, Sections 302.0191, 302.021(d), and 302.021(e-1) deprive Texans of their constitutional rights of free speech and association. Plaintiffs request a temporary restraining order and preliminary injunction so they can exercise their fundamental constitutional rights in the coming weeks leading up to the Speaker's election in January.

### I.   Preliminary Injunction Standard

There are four prerequisites for a temporary restraining order or preliminary injunction. To prevail, a plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being

granted; and (iv) that a temporary restraining order will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir.1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974) (*en banc*).

"Underlying the grant of such relief must . . . be an evaluation of the equitable considerations involved: the plaintiff's likelihood of prevailing on the merits, the possibility of irreparable harm to the plaintiffs, the counterbalancing risk of harm to the defendants, and the public interest." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). A plaintiff is not, however, required to prove his entitlement to *summary judgment* in order to establish "a substantial likelihood of success on the merits" for preliminary injunction purposes. *See ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 596 n. 34 (5th Cir. 2003); *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009). As demonstrated below, Plaintiffs satisfy each of these requirements and are accordingly entitled to the requested preliminary injunctive relief.

## II. Likelihood of Success on the Merits

Plaintiffs are likely to succeed in challenging Sections 302.0191, 302.021(d), and 302.021(e-1), because, as this Court held in 2008 with regard to similar provision of Chapter 302, those provisions run afoul of well-established Supreme Court precedent. *Reisman*, 573 F. Supp. 2d at 956. As the Supreme Court has long recognized, "there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs, of course including discussions of candidates." *Buckley*, 424 U.S. at 14 (cleaned up). The bans imposed by Sections 302.0191, 302.021(d), and 302.021(e-1) specifically target such "discussions of candidates" by prohibiting Texas citizens—both individually and through political committees and in their roles as candidates—from engaging in meaningful speech about Speaker

elections. These prohibitions plainly violate the First Amendment. *See Buckley*, 424 U.S. at 50 ("legislative restrictions on advocacy of the election or defeat of political candidates are wholly at odds with the guarantees of the First Amendment").

Unless and until this Court grants relief, Plaintiffs will continue to suffer irreparable harm to their fundamental constitutional rights.

    **A.**    **Sections 302.0191 and 302.021(e-1)s' Complete Bans on Contributions From Funds Accepted as Political Contributions Violate the First Amendment.**

Section 302.0191 and 302.021(e-1)'s prohibition on contributions to Speaker candidates of *any* amount from funds accepted as political contributions burdens two fundamental rights protected by the First Amendment: political speech and political association. This ban is so severe—not a single cent may be given—that it cannot be justified by any compelling state interest. Moreover, the extremity of the total ban, as opposed to a contribution limit, shows the statute is not narrowly tailored.

Contributions to political candidates are a "symbolic expression of support." *Buckley*, 424 U.S. at 21. Organizations may decide to contribute to a particular candidate because they consider that candidate to be the most effective speaker on a particular issue. *See, e.g., FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 261 (1986) ("*MCFL*") (noting that contributors often "regard such a contribution as a more effective means of advocacy than spending the money under their own personal direction"). Accordingly, limits on contributions undermine the constitutional right to engage in this unique form of protected political expression. As the Supreme Court has repeatedly recognized, contribution limits "impinge on the protected freedoms of expression and association." *McConnell v. FEC*, 540 U.S. 93, 231 (2003) (citing *Buckley*, 424 U.S. at 20-22).

Contribution limits also burden the right to engage in protected political association. As explained by the Supreme Court, "[m]aking a contribution, like joining a political party, serves to affiliate a person with a candidate. In addition, it enables like-minded persons to pool their resources in furtherance of common political goals. [C]ontribution ceilings thus limit one important means of associating with a candidate." *Buckley*, 424 U.S. at 22.

The Court has explained that contribution limits imposed on groups can be especially problematic when they "severely inhibit collective political activity by preventing [a group] from using contributions by small donors to provide meaningful assistance to any individual candidate." Randall v. Sorrell, 126 S. Ct. 2479, 2497 (2006) (Breyer, J., plurality). Because they burden core First Amendment freedoms of political speech and association, contribution limits can be sustained only if they are "closely drawn to match a sufficiently important interest." *Id*. at 2491 (internal quotation marks omitted) (quoting Buckley, 424 U.S. at 25).

In *Thompson v. Hebdon*, the Supreme Court noted that the lowest campaign contribution limit the Court had upheld was a $1,075 per two-year election cycle limit for candidates for Missouri state auditor in 1998 and that such a limit would translate to over $1,600 with inflation. 140 S. Ct. 348, 350 (2019) (citing *Nixon* v. *Shrink Missouri Government PAC*, 528 U.S. 377 (2000).

Here there is not a contribution "limit" but rather a total ban on contributions. This cannot be justified as "closely drawn" regardless of what sufficiently important governmental interest the state may put forward as justification. Accordingly, Sections 302.0191 and 302.021(e-1)s' bans on contributions by political committees and candidates must be declared unconstitutional and their enforcement enjoined.

**B.   Sections 302.0191 and 302.021(e-1)s' Complete Ban on Independent Expenditures using Funds Accepted as Political Contributions Violates the First Amendment.**

In addition to banning contributions, Sections 302.0191 and 302.021(e-1) also prohibit using funds accepted as political contributions under Title 15 of the Texas Election Code to make any independent expenditures to aid or defeat a Speaker candidate. "Independent expenditures constitute expression at the core of our electoral process and of the First Amendment freedoms," and any attempts to limit them have been met with strong skepticism by courts. *MCFL*, 479 U.S. at 251 (Brennan, J., plurality) (internal quotation marks omitted) (quoting *Buckley*, 424 U.S. at 39). Courts have thus "*routinely struck down* limitations on independent expenditures by candidates, other individuals, and groups." *FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 441 (2001) (emphasis added) (citing cases).

Sections 302.0191 and 302.021(e-1) do not merely *limit* independent expenditures by political committees and candidates—they completely ban them. They are a direct assault on the constitutional right of free speech and association and cannot be justified by any valid government interest.

First, Sections 302.0191 and 302.021(e-1)s' independent expenditure bans "heavily burden[] core First Amendment expression." *Buckley*, 424 U.S. at 48. As the Supreme Court has consistently explained, limitations on independent expenditures to advocate for the election or defeat of political candidates "impose direct and substantial restraints on the quantity of political speech." *Id.* at 39. Such regulations are "directed at speech itself, and the speech is intimately related to the process of governing." *Bellotti*, 435 U.S. at 786. Thus, in defending such regulations, "the State may prevail only upon showing a subordinating interest which is compelling, and the

burden is on the government to show the existence of such an interest. Even then, the State must employ means closely drawn to avoid unnecessary abridgment." *Id.* (citations and internal quotation marks omitted).

Sections 302.0191 and 302.021(e-1) badly fail this test. As noted, "preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances." *NCPAC*, 470 U.S. at 496-97. The Supreme Court has repeatedly found those interests insufficient to uphold even independent expenditure limits far less draconian than the complete ban imposed by Sections 302.0191 and 302.021(e-1). *See, e.g., id. Buckley*, 424 U.S. at 58. Even assuming that Defendants could adduce *some* instances where independent expenditures made by political committees and candidates to influence the Speaker's race presented a significant risk of corruption or its appearance, Sections 302.0191 and 302.021(e-1) are "a fatally overbroad response to that evil." *NCPAC*, 470 U.S. at 498. Sections 302.0191 and 302.021(e-1) ban *all* independent expenditures using funds accepted as political contributions under Title 15 of the Texas Election Code. This prohibition results in a categorical ban on political committees and candidates using their PAC and campaign funds to speak about a Speaker's race.

Sections 302.0191 and 302.021(e-1)s' independent expenditure ban violates the right to associate with others in order to influence the election for Speaker. Political committees "are mechanisms by which large numbers of individuals of modest means can join together in organizations which serve to amplify the voice of their adherents." NCPAC, 470 U.S. at 494 (internal quotation marks, citations, and alteration omitted). "To say that [individuals'] collective action in pooling their resources to amplify their voices is not entitled to full First Amendment protection would subordinate the voices of those of modest means," because ordinary citizens

often must band together to be heard. *Id*. at 495. Yet Sections 302.0191 and 302.021(e-1)s' independent expenditure bans prevent political committees from using their funds to aid or defeat a Speaker candidate. "[G]overnmental 'action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny.'" Buckley, 424 U.S. at 25 (emphasis added, citation omitted). Section 302.0191's wholesale prohibition of all independent expenditures by political committees and candidates' campaigns clearly fails under that exacting standard.

In sum, Sections 302.0191 and 302.021(e-1)s' independent expenditure bans severely burden the First Amendment rights to speech and association. "[W]hen the First Amendment is involved, [the] standard of review is 'rigorous.'" *NCPAC*, 470 U.S. at 501 (citation omitted). Here, as in *NCPAC*, any "effort to link either corruption or the appearance of corruption to independent expenditures . . . simply does not pass this standard of review." *Id.* These statutes are unconstitutional and must be enjoined

    **C.    Section 302.021(d)'s Near-Total Ban on Independent Expenditures by Individuals Violates the First Amendment.**

Section 302.021(d) forbids individuals from making any independent expenditures to influence the election for Speaker, with only two narrow exceptions: (1) up to $100 for correspondence, and (2) personal time and labor. That near-total ban violates the First Amendment right to political speech, as this Court held in *Reisman* when holding that the former Section 302.019 was unconstitutional. 573 F. Supp. 2d 952. Section 302.021(d)'s sweeping prohibition of independent expenditures continues to trample on the speech rights of individual Texans despite this Court's holding 14 years ago that such a ban is unconstitutional. This Court must declare that section 302.021(d) also violates the Constitution and enjoin its enforcement.

### III.     Threat of Irreparable Harm

Plaintiffs' claims of constitutional injury plainly present "a substantial threat that irreparable injury would result if the preliminary injunction [does] not issue." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 623 (5th Cir. 1985). As both the Supreme Court and the Fifth Circuit have held, the "[l]oss of First Amendment freedoms, even for minimal periods of time, constitute[s] irreparable injury." *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Because Sections 302.0191, 302.021(d), and 302.021(e-1) violate Plaintiffs' constitutional rights under the First and Fourteenth Amendments, "there are no legal remedies available that would adequately compensate [them]. There is no way to calculate the value of such a constitutional deprivation." *Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir.1998). Therefore, the only adequate remedy available to Plaintiffs is an injunction. *See Ne. Fla. Chapter of the Assoc. of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("chilled free speech . . . could not be compensated by monetary damages"), *rev'd on other grounds*, 508 U.S. 656 (1993).

Plaintiffs have stated that they are currently abstaining from speech protected by the First and Fourteenth Amendments because of the statutes. *See* Declaration of Robert Bruce at ¶ 5; Declaration of Bryan Slaton at ¶¶7-9; Declaration of Sandra Lawson ¶¶ 5-6.

As demonstrated, Sections 302.0191, 302.021(d), and 302.021(e-1) severely restrict Plaintiffs' ability to exercise their First Amendment rights to express their views on the Speaker's race. Indeed, the threat of injury is especially acute in this case, because without immediate relief, Plaintiffs will be denied an opportunity to influence the current Speaker's race. Accordingly, there

is more than a substantial threat—there is a certainty—that Plaintiffs will suffer irreparable injury if the Court does not grant immediate preliminary injunctive relief.

### IV. Balancing of Harms

A preliminary injunction is also warranted because the "threatened injury to [Plaintiffs] . . . outweighs the potential harm the injunction causes the [Defendants]." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 332 (5th Cir. 1981) *See also Texas Democratic Party v. Benkiser*, 459 F.3d 582, 595 (5th Cir. 2006) ("the injunction was an appropriate remedy" to rectify the violation of constitutional rights). Without a preliminary injunction, Plaintiffs will continue to suffer irreparable injury to their constitutional rights. By contrast, Defendants suffer no comparable injury if the Court grants a preliminary injunction. To the extent that Sections 302.0191, 302.021(d) and 302.021(e-1) are designed to prevent corruption in the Speaker's race, this goal is amply achieved through reporting requirements that are already in force. *See, e.g.*, Tex. Gov't Code §§ 302.013 & 302.014. Moreover, Defendants can claim no legitimate "interest in enforcing a law that 'curtails debate and discussion' regarding issues of political import." *Suster v. Marshall*, 149 F.3d 523, 533 (6th Cir. 1998) (quoting *Citizens Against Rent Control v. Berkeley*, 454 U.S. 290, 299 (1981)). Because the balance of hardships tips sharply in Plaintiffs' favor, the Court should grant the requested preliminary relief.

### V. Effect on the Public Interest

Finally, the public interest is well served by a preliminary injunction that prevents the government from violating fundamental constitutional rights. *See, e.g., Laredo Rd. Co. v. Maverick County, Tex.*, 389 F. Supp. 2d 729, 748 (W.D. Tex. 2005) ("because its rights to free speech, as protected by the First Amendment, will be curtailed . . . [t]he granting of a preliminary injunction

in favor of the Plaintiff will not disserve the public's interest, as a government's constituents have a vested interest in their government enacting constitutionally sound laws"). Even minimal First Amendment violations constitute[] irreparable injury . . . and preventing them is always in the public interest. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013).

Sections 302.0191, 302.021(d) and 302.021(e-1) severely restrict expression in the political process, where "the constitutional guarantee [of free speech] has its fullest and most urgent application." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971). The public interest is especially immediate in this case.

## CONCLUSION

Courts must "give the benefit of the doubt to speech, not censorship. The First Amendment's command that 'Congress shall make no law . . . abridging the freedom of speech' demands at least that." *Wis. Right to Life, Inc.*, 127 S. Ct. at 2674 (Roberts, C.J., plurality). As demonstrated, Sections 302.0191, 302.021(d) and 302.021(e-1) violate the First and Fourteenth Amendments in multiple ways, any one of which warrants preliminary injunctive relief. Every day that goes by is one more day that Plaintiffs are prevented from exercising their fundamental right to participate in the on-going debate over the Speaker's race. Accordingly, this Court should grant an immediate temporary restraining order and preliminary injunction preventing Defendants from enforcing Sections 302.0191, 302.021(d) and 302.021(e-1) of the Texas Government Code.[1]

---

[1] Plaintiffs are willing to execute a reasonable bond in order to secure such a TRO and Preliminary Injunction. However, because this lawsuit is brought to vindicate Plaintiffs' First and Fourteenth Amendment rights and is in the public interest, Plaintiffs request that any bond requirement be waived. *See Gilmore v. Wells Fargo Bank N.A.*, 2014 WL 3749984, at *6 (N.D. Cal. July 29, 2014).

Respectfully submitted,

**THE LAW OFFICES OF TONY MCDONALD**

By: /s/ Tony McDonald

Tony McDonald
State Bar No. 24083477
tony@tonymcdonald.com
Garrett McMillan
State Bar No. 24116747
garrett@tonymcdonald.com
THE LAW OFFICES OF TONY MCDONALD
1501 Leander Dr., Ste. B2
Leander, TX 78641
(512) 200-3608 (Tel)
(815) 550-1292 (Fax)
*Counsel for Plaintiffs*

## CERTIFICATE OF CONFERENCE

On November 10th and 11th, 2022, the undersigned counsel conferred with opposing counsel concerning the relief sought in this Application for Temporary Restraining Order and Preliminary Injunction. General Counsel for the TEC, James Tinley, indicated he was able to expressed no position at this time. Given the urgent nature of this matter, this Application is being filed immediately.

/s/ Tony K McDonald
Tony K McDonald

## CERTIFICATE OF SERVICE

I certify that on November 11, 2022, I sent a true and correct copy of the forgoing Application for Temporary Restraining Order and Preliminary Injunction and the accompanying exhibits by email to the following individual:

James Tinley
General Counsel, Texas Ethics Commission
201 East 14th St., 10th Floor
Austin, TX 78701
james.tinley@ethics.state.tx.us

/s/ Tony K McDonald
Tony K McDonald