IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROBERT BRUCE, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:22-CV-1166-RP |
| J.R. JOHNSON, et al., | § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court are a Motion for Leave to Intervene, (Dkt. 11), and an agreed Motion for a Permanent Injunction, (Dkt. 13). Having considered the motions, the parties' briefing, and the relevant law, the Court will deny the motion to intervene and will enter the agreed permanent injunction by separate order.

## I. BACKGROUND

On November 10, 2022, Plaintiffs Robert Bruce, Texas House Representative Bryan Slaton, and Grayson County Conservatives PAC ("Plaintiffs"), all of whom are interested in making contributions to a Texas House Speaker candidate, filed a complaint against Defendants J.R. Johnson, et al. ("Defendants"), in their official capacity as members of the Texas Ethics Commission ("TEC"). (Compl., Dkt. 1). The following day, Plaintiffs filed a motion for a temporary restraining order. (Mot. TRO, Dkt. 4). In their motion, Plaintiffs sought to have provisions of the Texas Government Code which prohibit funding for the Texas House Speaker's race declared unconstitutional. (*Id.*). The motion argues that this Court already declared nearly identical portions of the government code unconstitutional in a case from 14 years ago, and ask that the holding in that case should be extended to the remaining provisions of the government code. (*Id.* citing *Free Mkt. Found. v. Reisman,* 573 F. Supp. 2d 952 (W.D. Tex. 2008)).

1

On November 16, the Court held a phone conference with both parties, where it denied the TRO on grounds of irreparable harm, but noted that it would hold a hearing in the coming days to decide the preliminary injunction. (Minute Entry, Dkt. 6). Counsel for Defendants noted that the TEC would be convening in a matter of days, where they could discuss the pending case and whether they intended to enforce the challenged provisions of the Texas Government Code. (*Id.*). The Court scheduled a hearing on the preliminary injunction for December 6, but on December 4, the parties filed a joint motion to continue the hearing, noting that they were engaged in "settlement discussion" and that the TEC would meet on December 13. (Mot., Dkt. 8). The Court stayed the preliminary injunction that same day. (Order, Dkt. 9).

On December 13, the proposed intervenors Charlie Geren and Dustin Burrows ("Movants"), both members of the Texas House of Representatives, filed a motion for leave to intervene. (Mot., Dkt. 11). In their motion, Movants argue that the Texas Speaker's election is a fundamentally legislative process, and thus implicates their interest as members of the legislature. (*Id.* at 2–6). They move for intervention of right, or, in the alternative, permissive intervention. (*Id.* at 2–7). On December 23, Movants filed a response in opposition to the otherwise unopposed motion for a permanent injunction, arguing that the proposed agreement should not be entered because it would violate the public interest. (Resp., Dkt. 14). On December 27, Plaintiffs filed a response to the motion for leave to intervene, stating that Movants lack standing and that the election of a speaker is not a legislative act but a matter of public debate. (Pls.' Resp., Dkt. 15).

## II. MOTION TO INTERVENE

Movants seek to intervene both by right and permissively. (Mot. Intervene, Dkt. 11). For the following reasons, the Court finds that Movants are not entitled to intervene by right and declines to exercise its discretion to permit them to intervene.

### A. Intervention by Right

Intervention by right is governed by Federal Rule of Civil Procedure 24(a). To intervene by right, the prospective intervenor either must be "given an unconditional right to intervene by a federal statute," Fed. R. Civ. P. 24(a)(1), or must meet each of the four requirements of Rule 24(a)(2):

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Id.* (citations omitted). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994) (internal quotation marks omitted). However, the Fifth Circuit has also cautioned courts to be "circumspect about allowing intervention of right by public-spirited citizens in suits by or against a public entity for simple reasons of expediency and judicial efficiency." *City of Hous. v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012).

1. Timeliness

Because Movants filed their motion after the existing parties had already notified the Court of pending settlement discussions, the motion was not timely filed. When deciding whether a motion to intervene is timely, courts should consider: (1) how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervener failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervener may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness." *John Doe No. 1 v. Glickman*,

3

256 F.3d 371 (5th Cir. 2001) (cleaned up). These factors are a "framework and not a formula" for determining timeliness. *Id.* (citing *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996)).

      A court's timeliness inquiry is highly contextual. "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994). A motion to intervene's timeliness should be determined "from all the circumstances." *Edwards*, 78 F.3d at 1000. Here, the context weighs heavily against considering the motion timely. When Movants filed their motion, the original parties had already filed a notice with the Court stating that they were engaged in settlement discussions. (Mot. Intervene, Dkt. 11; Mot. Continue, Dkt. 8). Perhaps more importantly, the motion to intervene was filed after the original preliminary injunction hearing was to take place. (Order, Dkt. 7). In other words, had the parties not stayed the motion to negotiate a permanent injunction, it is likely that the Court would have already entered a preliminary injunction—if it were to enter an injunction—by the time Movants moved in this case.

      The context of the case weighs against a finding that the motion to intervene is timely. When Movants filed their motion, settlement talks were already pending. While the Court did not stay the case entirely, it did stay the pending proceedings related to the preliminary injunction, which both parties recognized was the core issue at stake. Thus, because the controversy between the parties had effectively been stayed by the time the motion to intervene was filed, it was not timely. The Court is cognizant of the fact that Movants filed their motion a little over a month after the complaint was filed. However, TROs and preliminary injunctions, by their very nature, generally proceed at an expedited rate. Here, the prejudice to Plaintiffs would be extreme, as they would be forced to re-litigate a matter that has already settled. *See Espy*, 18 F.3d at 1205. Moreover, their motion which timely requested expedited relief would be delayed until the Court had time to consider an opposed

4

preliminary injunction. Thus, because the motion to intervene would disturb the existing settlement, the Court will deny it as untimely.

### 2. An Interest in the Transaction

Rule 24(a)(2) requires that an applicant to intervene has a "direct, substantial, legally protectable interest in the proceedings." *Texas*, 805 F. 3d at 657 (citation and quotation marks omitted). Whether an applicant has a legally protectable interest in the main action "turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way. So, an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely prefers one outcome to the other." *Id.* Although defining a "legally protectable interest" can be "a tautological exercise—a party may intervene if its interest is legally protectable and its interest is legally protectable if it can intervene"—the Fifth Circuit's cases provide guidance about what constitutes a sufficient interest for purposes of Rule 24(a)(2). *Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 568 (5th Cir. 2016).

Here, even if Movants had timely filed their motion, they would lack a protected interest in the proceedings. Movants' claim that they have an interest at stake because they "will be subjected to the effects of limitless spending of political contributions" which "raises the prospect of influence-buying and corruption tainting the selection of the Speaker." (Mot. Intervene, Dkt. 11, at 4). However, mere concern that spending will increase in the Speaker's election does not constitute a legally cognizable interest sufficient to sustain a motion to intervene. *See Texas*, 805 F.3d at 658 (explaining that a "generalized" interest that is universally preferable is insufficient to support intervention).

While the Movants might fear "influence-buying" if restrictions on the House Speaker's race are eliminated, the Supreme Court has repeatedly rejected such arguments. *See Citizens United v. Fed.*

*Election Comm'n*, 558 U.S. 310, 357 (2010) ("[I]ndependent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption."); *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 208 (2014) ("Spending large sums of money in connection with elections, but not in connection with an effort to control the exercise of an officeholder's official duties, does not give rise to such quid pro quo corruption."). The proposed intervenor's attempts to recast the House Speaker's election as a legislative act are equally unavailing. (Mot. Intervene, Dkt. 11, at 1–5). The Court foreclosed such arguments 14 years ago when it struck down similar restrictions on funding the House Speaker's race. *See Free Mkt. Found. v. Reisman*, 573 F. Supp. 2d 952, 955 (W.D. Tex. 2008) ("The election of the Speaker is not . . . a matter of internal Housekeeping. It is an issue of great political importance and a legitimate subject of public debate."). Accordingly, the Court finds that Movants lack a protected interest in the outcome of the issue.

### B. Permissive Intervention

On a timely motion, a court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention "is wholly discretionary . . . even though there is a common question of law or fact." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co. ("NOPSI")*, 732 F.2d 452, 463 (5th Cir. 1984)). Here, the motion to intervene was not timely filed. In addition, though it may raise common questions of law, the Court finds no reason to exercise its discretion to grant intervention in a case which has already settled. Movants' motion for permissive intervention is denied.

### III. MOTION FOR PERMANENT INJUNCTION

Finally, the Court turns to Plaintiffs' and Defendants' agreed motion for a permanent injunction. Movants filed a response in opposition, arguing that the TEC lacks the power to stop enforcing the laws at issue. (Resp., Dkt. 14). While Movants are not strictly parties to this case, the

Court nonetheless finds it prudent to briefly discuss whether to enter the proposed judgment. "When presented with a proposed judgment, the court must not merely sign on the line provided by the parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 846 (5th Cir. 1993) (citing *United States v. City of Miami*, 664 F.2d 435, 440 (5th Cir. 1981) (en banc)). "A consent decree must arise from the pleaded case and further the objectives of the law upon which the complaint is based." *Id.* (citing *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986)).

Here, the Court finds no reason to deny the parties' agreed final judgment. There is no dispute that it arises from the Plaintiffs' complaint, which argues that the restrictions on financial contributions to the House Speaker's race are unconstitutional. (Compl., Dkt. 1, at 2–7). This Court has already held that identical provisions of the Texas Government Code violate the Constitution. *See Free Mkt. Found. v. Reisman*, 573 F. Supp. 2d 952 (W.D. Tex. 2008). As Plaintiffs noted in their complaint, the Court in *Free Market* issued declaratory relief, but found it unnecessary to issue injunctive relief based upon the procedural posture of the case. *Id.* While the Texas Legislature repealed the provisions of the code at issue in *Free Market*, it did not repeal the remaining provisions that used the same language. (Compl., Dkt. 1, at 2). Movants note that the TEC lacks the authority to unilaterally stop enforcing statutes. (Resp., Dkt. 14, at 3). Here, however, the laws at stake are the remnants of a provision which has already been ruled unconstitutional. *Free Mkt. Found.*, 573 F. Supp. 2d at 956. A court's validation of a consent decree "requires a determination that the proposal represents a reasonable factual and legal determination based on the facts of record." *Miami*, 664 F.2d at 441. In light of this Court's holding in *Free Market*, it is a reasonable legal determination that the challenged statutes violate the First Amendment, and the Court finds good cause to enter the proposed final judgment.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Movants' Motion for Leave to Intervene, (Dkt. 11), is **DENIED**.

Final judgment and entry of the permanent injunction shall follow in a separate order.

**SIGNED** on January 3, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE